UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20265-CR-MARTINEZ

UNITED STATES OF AMERICA

vs.

ROSETTA LATRICIA TOOKS and
JEFFREY JOSEPH,

    Defendant.

_____/

## GOVERNMENT'S OBJECTIONS TO
## PSI, RESPONSE AND SENTENCING MEMORANDUM

The Government respectfully requests that the sentencing be extended in time so that the case agent can testify as to the disputed matters on loss, restitution, and enhancements. The Court is familiar with the epidemic of Stolen Identity Fraud. This specific prosecution stems from an SSA-OIG investigation into stolen-identity Social Security Retirement Insurance Benefit (RIB) and Disability Insurance Benefit (DIB) fraud.

The defendants would pay to obtain stolen personal identity information (PII) (*i.e.*, names, dates of birth, and social security numbers) of victims using the internet. Where the victims are eligible for retirement or disability benefits from Social Security, but have not yet claimed them, the defendants would file "iClaims" on the socialsecurity.gov website and direct the payments into bank accounts or prepaid debit cards that they controlled. In this way, the defendants would steal benefits before those entitled to the benefits ever claimed them.

Alternatively, the defendants would use that PII to create unauthorized accounts on the

1

social security website called MySSA.gov.  Existing beneficiaries do not need a MySSA account, but can use them to easily make changes to their benefits such as direct deposit information.  The defendants then would steal benefits from existing beneficiaries by <u>redirection</u> into bank accounts or prepaid debit cards that they controlled.

To hide their trail, they would again use victim PII to open bank accounts in victim's names.  Those bank accounts were where they would deposit part of the proceeds.  The defendants would need to expose themselves to withdraw the fraud proceeds because the ATM and bank videos would capture them withdrawing the money.  In some cases, the defendants would enlist co-conspirators to make withdrawals and they would receive a cut of the fraud proceeds.

SSA-OIG was able to link false claims together based on IP addresses of the filers.  In addition, the defendants would have to provide mailing addresses and email addresses for their false claims to Social Security.  There were common or similar addresses provided for many of these false claims.  These could be linked to actual address information for Joseph in some cases.

**A. Specific Offense Characteristic § 2B1.1(b)(1)(F):   The 10-Level Enhancement for Loss of over $120,000 is Correct under Hybrid Approach**

Based on investigation, SSA-OIG has been able to link 189 fraudulent SSA claims to the defendants.  24 of those claims were approved by SSA and resulted in an actual loss of $81,124.90.  The remaining 165 claims that were not paid lead to an intended loss of $82,500 because the Guidelines provide for $500 per access device.  The defendants would use computers and the internet to file the false claims and would often file as many claims as possible and collect the proceeds on the claims that SSA paid.

The guidelines provide for special rules in cases like this one involving access devices. In such cases, "loss includes any unauthorized charges made with the counterfeit access device ... and shall not be less than $500 per access device." Application Note 3(F)(i).

In the alternative, the Court could use an intended loss of $94,500 on the 189 claims which would result in an 8-level enhancement. The Government has evidence that fraudulent tax refund fraud proceeds were also deposited into the bank accounts controlled by these defendants. Thus, any loss amount underestimates that total scope of their fraud against the Government.

B. **Specific Offense Characteristic § 2B1.1(b)(2):   The 4-Level Enhancement for Over 50 Victims Should apply**

The instant case involves PII of over 50 individuals. Indeed, PII of over 100 people was used unlawfully and without authority. Application Note 4(E). Many of these people were elderly. Some of them have been prevented from getting their Social Security benefits on time.

C. **Specific Offense Characteristic § 2B1.1(b)(10)(C):   The 2-Level Enhancement for Sophisticated Means should apply to JOSEPH**

Conduct such as hiding assets or transactions, or both, through the use of fictitious entities indicates sophisticated means. Application Note 9(B). Defendant Joseph opened bank accounts in other people's names as "shells" into which they deposited fraudulent proceeds. Joseph employed the use of a fraudulent "Power of Attorney" with a fraudulent notary in order to obtain fraud proceeds from one of these shells. Joseph acquired PII using Bitcoin on an unmonitored part of the Internet. While anyone with criminal intent could misuse PII, Joseph took it a step further and concealed his activity, attempted to work an additional deception at the bank branch, and used extraordinary means to obtain the PII. Tooks used a bank account in her own name so

the Government does not advocate for this enhancement for Tooks.

### D. TOOKS should receive no Adjustment for Role in the Offense

TOOKS admitted to being in a romantic relationship with JOSEPH during the fraud. TOOKS admitted post-*Miranda* that she participated that that she made ATM withdrawals. TOOKS admitted to opening bank accounts and withdrawing fraudulent proceeds, including Social Security benefits, that did not belong to her. TOOKS stated that she made ATM withdrawals of fraudulent proceeds and estimated that she and JOSEPH had made between $50,000 and $100,000 in withdrawals.

On January 14, 2015, TOOKS appeared at a bank branch and presented a fraudulent power of attorney on behalf of stolen identity victim "T.B," as justification for the receipt of the Social Security benefits from this account. The power of attorney listed T.B. at an address that was a close variation of JOSEPH's current residential address. The power of attorney also listed a Florida driver's license of a different "T.B." On March 26, 2015, TOOKS returned to the bank branch to ask Citibank to unblock the account.

On July 20, 2014, video shows TOOKS and JOSEPH making an over the counter withdrawal together from the same Citibank account in TOOKS' name.

A fraudulent claim filed on September 17, 2014 on behalf of stolen identity victim "N.Z." directed deposit of fraud proceeds into a particular B of I account ending 5417. The account was opened in the name of TOOKS and had a listed address that was associated with a family member of TOOKS.

During this offense, TOOKS was arrested for using a victim's PII to purchase a 2011 Nissan in January 2014.

### E. <u>Restitution</u>

The case agent can testify that SSA lost $81,124.90 and that this restitution amount is based on the actual loss from the 24 claims paid that can be linked to the common IP addresses and residential and email addresses. This does not include the beneficiaries who suffered a delay in receiving their SSA benefits.

### F. <u>Restitution</u>

**Joseph:** Level 22, III

Joseph does not get acceptance of responsibility because his bond was revoked.

51 months on Count 2 and 24 months consecutive on Count 4

**Tooks:** Level 20, I

Level 17 (with acceptance) - 24 months on Count 3 and 24 months consecutive on Count 5

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

By:   <u>Timothy J. Abraham</u>
      TIMOTHY J. ABRAHAM
      ASSISTANT U.S. ATTORNEY
      Florida Bar No. 114372
      99 N. E. 4th Street, 6th Floor
      Miami, Florida 33132-2111
      Tel. No. (305) 961-9438
      Fax No. (305) 530-7976
      **Email: Timothy.Abraham2@usdoj.gov**

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 2, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which sent notice to the parties of record.

/s/Timothy J. Abraham
Timothy J. Abraham, AUSA